**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**VANESSA JOHNSON** **PLAINTIFF**

**v.** **NO.** 1:23CV83-SA-DAS

**NORTHROP GRUMMAN SYSTEMS CORPORATION** **DEFENDANT**
**(JURY TRIAL DEMANDED)**

**COMPLAINT**

When Vanessa Johnson (race: Black) heard her White coworkers say they should "Kill all the Black motherfuckers" and "Hang them like we used to back in the day," she reported it to her supervisor. He joked about it, referred to her as "sensitive" and did not discipline the harassers. The hostility increased, as her coworkers considered her a "snitch." She continued reporting it. The only result was that she was further harassed, denied promotions, demoted and written up. She was ultimately hospitalized because of the strain. The employer then wrote her up for needing medical leave. For these reasons COMES NOW the Plaintiff and alleges as follows:

**JURISDICTION, VENUE and JURY DEMAND**

1. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this claim arises under federal law, including 42 U.S.C. §§ 1981 and 2000e, and 29 U.S.C. §§ 206, 215(a)(3).

2. Venue is proper in this Court under 28 U.S.C. § 1391 because all work at issue was located in Tishomingo County, Mississippi.

3. Pursuant to the Federal Rules of Civil Procedure 38(b)(1), trial by jury is demanded on all issues so triable, and Plaintiff asserts all rights to jury trial under the Seventh Amendment of the United States Constitution.

**THE PARTIES**

4. Plaintiff Vanessa Y. Johnson is an adult resident of Mississippi.
5. Ms. Johnson's race is Black.
6. Ms. Johnson is disabled as defined by the Rehabilitation Act.
7. Ms. Johnson has a medical condition.
8. She is substantially limited in the major life activity of, *inter alia*, working.
9. She is regarded as disabled by her employer.
10. She has a record of disability known to her employer.
11. Ms. Johnson is an employee of Defendant Northrop Grumman Systems Corporations ("Northrop Grumman").
12. Northrop Grumman is an "employer" as defined by Title VII of the Civil Rights Act of 1964, as amended.
13. Northrop Grumman receives federal funds.
14. Northrop Grumman performs federal contract work and is paid by the government for this work.
15. Northrop Grumman is subject to Sections 503 and 504 of the Rehabilitation Act.
16. Northrop Grumman is a "person" subject to 42 U.S.C. § 1981.

17. Northrop Grumman can be served via its registered agent, C. T. CORPORATION SYSTEM, located at 645 LAKELAND EAST DRIVE, STE 101, FLOWOOD, MS 39232.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

18. Ms. Johnson filed an EEOC charge on May 31, 2022. Exhibit 1 (charge).
19. When this charge was filed, it was within 180 days of the most recent alleged incident which Ms. Johnson claimed was part of the harassment she suffered.
20. In this charge, she timely raised all the issues brought in this lawsuit.
21. Ms. Johnson received a notice of right to sue from the EEOC on April 20, 2023. Exhibit 2 (right to sue).
22. Ms. Johnson files this complaint within 90 days of receipt of the notice.
23. Ms. Johnson has exhausted her administrative remedies by timely filing discrimination charges with the EEOC, receiving a right to sue letter and timely filing this Complaint.

**STATEMENT OF FACTS**

24. Ms. Johnson began working for Northrop Grumman as a Composites Production Operator in September 2019.
25. During her employment, Ms. Johnson endured hostile racial comments from both coworkers and supervisors.
26. The following examples are illustrative of the kinds of actions which were

commonplace throughout Ms. Johnson's employment, and are not meant to be an exhaustive list.

27. When Ms. Johnson's project lead, Matthew Lovelace, discovered that she drove a nice car, he laughed at her and asked her why she didn't have a Cadillac.

28. This referenced a racist stereotype.

29. Mr. Lovelace is a White man.

30. In another incident in September 2020, coworker Eve Elrod said "If it was me, I'd kill all the black motherfuckers," in reference to George Floyd protests in Kentucky.

31. This statement was made to Deborah York in Ms. Johnson's presence.

32. Ms. Elrod and Ms. York are White women.

33. In January 2021, Ms. Johnson was in the employee break room for lunch. She heard Ms. Elrod state "Let's hang them like we used to back in the day" while watching news coverage of Black protestors.

34. Her niece Regan Berry, a White woman, then approached Ms. Johnson unprompted, stooped over her, said, "And by the way, Black Lives Matter is overrated."

35. That same day, Ms. Johnson made an oral complaint to Jake Wilbanks about this incident.

36. Mr. Wilbanks is her supervisor.

37. Mr. Wilbanks is a White man.

38. Mr. Wilbanks promised that he would speak to Bobby Tucker.

39. Mr. Tucker is Mr. Wilbanks' supervisor.

40. Mr. Tucker is a White man.

41. On January 21, 2021, Mr. Wilbanks entered the employee break room with a smirk and jokingly asked if everyone was behaving and getting along.

42. On January 22, 2021, Ms. Johnson called a hotline number that she found on the Northrop Grumman website.

43. Ms. Johnson informed the hotline of her coworkers' racial harassment and management's unsatisfactory response.

44. That evening, Mr. Wilbanks gathered Ms. Johnson and her coworkers and spoke to them about the comments.

45. He again smirked about the matter. He stated that they were no longer supposed to discuss politics, religion, and race because "some people are more sensitive than others."

46. This failed to end the harassment.

47. News of Ms. Johnson's report spread to other members of the workplace.

48. One of Ms. Johnson's coworkers overheard Mr. Lovelace state that "we have a snitch in the house."

49. On March 29, 2021, Ms. Johnson was contacted by Renae Hadley Dickey, a

Human Resources Business Partner.

50. Ms. Dickey was in charge of conducting an investigation into Ms. Johnson's workplace treatment.

51. Ms. Johnson informed Ms. Dickey that Mr. Wilbanks and Mr. Tucker did not document her oral complaints.

52. HR instructed Ronda Stringer—Mr. Tucker's executive assistant—to begin taking written documentation for Ms. Johnson's complaints to plant supervisors and management.

53. Ms. Stringer is a White woman.

54. Ms. Stringer took notes for Ms. Johnson's oral complaints to Mr. Wilson.

55. However, Ms. Stringer did not take notes for Ms. Johnson's oral complaints to Mr. Tucker.

56. Conversations between Ms. Johnson and John Kain, the plant's Director of Operations, began after HR's involvement.

57. Mr. Kain is a White man.

58. Ms. Stringer did not document Ms. Johnson's oral complaints to Mr. Kain.

59. In these oral complaints, Mr. Wilbanks, Mr. Tucker, and Mr. Kain repeatedly denied Ms. Johnson's experience of racial discrimination at the plant.

60. On April 4, 2021, Ms. Johnson spoke to an engineer about an issue with her project's technical specifications.

61. Under company policy, materials should not be placed on a project unless it meets specifications. An employee faces punishment if they deviate from company procedure.

62. After Ms. Johnson spoke to an engineer, Mr. Tucker approached her work station.

63. He criticized her project's lack of materials and instructed her to "fix it." She tried explaining her concerns about deviating from company procedure.

64. Mr. Tucker angrily informed Ms. Johnson that he did not want her talking to engineers and instructed her to speak to her project lead if she had an issue. This instruction was not given to any other employee.

65. Ms. Berry was Ms. Johnson's temporary project lead because Mr. Lovelace was on vacation that week.

66. Ms. Johnson was placed on this project and others by herself when there should have been an additional team member working with her.

67. On April 8, 2021, Ms. Johnson requested transfer to another Shiloh Program due to her continued harassment.

68. On June 10, 2021, Ms. Johnson underwent surgery. She began medical leave that month for her procedure.

69. On July 22, 2021, Ms. Johnson returned from medical leave. She discovered that her employer removed her from the security clearance program without

explanation.

70. Ms. Johnson was also shifted from the Shiloh Program to the Antares Program.

71. Her position title was changed from "Composites Production Operator" to "Manufacturing Technician 1."

72. This transition constituted a constructive demotion due to the Shiloh Program's importance to the plant. The Antares program also required more strenuous physical labor at work.

73. One of Ms. Johnson's previous coworkers, Kassie Ligon, also transitioned to the Antares Program, but received a promotion to project lead.

74. Ms. Ligon is a White woman.

75. None of Ms. Johnson's other coworkers were relocated to the Antares Program.

76. She was also changed to a different supervisor, Michael Davis.

77. Mr. Davis is a White man.

78. Soon after Ms. Johnson's transfer to the Antares Program, Ms. Ligon began exhibiting workplace hostility toward Ms. Johnson.

79. Instead of training Ms. Johnson on new projects, Ms. Ligon yelled at her for asking work-related questions.

80. Ms. Johnson reported Ms. Ligon's behavior to Mr. Davis.

81. Instead of addressing Ms. Ligon's actions, Mr. Davis suggested that he and Ms. Johnson "pray together."

82. Ms. Johnson reported Ms. Ligon's conduct and Mr. Davis' inaction to Mr. Kain and Ms. Dickey.
83. Neither Mr. Kain nor Ms. Dickey resolved the issue.
84. Mr. Johnson began applying for other jobs within Northrop Grumman to move departments.
85. She submitted nineteen applications, but was not placed in any of the positions.
86. White employees were placed in the available positions.
87. In February 2022, Ms. Johnson requested paid time-off for her niece's championship basketball game on March 1, 2022. Mr. Davis denied her request, claiming that the event was an illegitimate reason to claim paid time-off.
88. Upset by Ms. Johnson's report to management, Mr. Davis placed two attendance points on her record on March 3, 2022. He stated: "I could have worked with you, but when you get HR involved, this is what happens to you."
89. Mr. Davis did not enforce the attendance point system against Ms. Johnson before. She had previously taken off of work without paid time-off for her son's braces appointments and other matters.
90. Ms. Ligon also retaliated against Ms. Johnson for her reports to John Kain.
91. On March 4, 2022, Ms. Johnson worked with Ms. Ligon. While laying flags, Ms. Johnson asked a question and Ms. Ligon yelled "How many times have you done this before? You know what you're doing!" She continued yelling after Ms.

Johnson requested workplace respect.

92. Upset by the treatment, Ms. Johnson's stomach began hurting and she experienced a panic attack. Other employees measured her blood pressure and decided she required hospitalization. Ms. Johnson fainted twice while being driven to the emergency room.

93. After being released from the hospital later that day, Ms. Johnson called Vanessa Newsome, her coworker, to retrieve her purse from her employee locker.

94. She handed Ms. Newsome a copy of her doctor's note from the emergency room. This note required Ms. Johnson to cease work until Monday March 7, 2022.

95. Ms. Newsome could not open Ms. Johnson's locker and required assistance from Mr. Davis.

96. When Ms. Johnson returned to work on Monday, Mr. Davis informed her she would receive additional attendance points for missing work from March 4th-6th.

97. Ms. Johnson mentioned her medical excuse, but Mr. Davis stated that she had to use paid time-off even with a medical excuse.

98. If Ms. Johnson reported paid time-off and possessed insufficient time, it would be cause for termination.

99. After this disagreement, Mr. Davis engaged in intimidating behavior. He came to her area, sat in a chair, and watched her work. This was in an effort to find cause

for further discipline or termination.

100. He did not engage in this behavior with other employees.

101. On March 8, 2022, Ms. Johnson attended a meeting with her primary care physician who ordered that she not return to work due to severe emotional distress.

102. On March 9, 2022, Ms. Johnson began medical leave per her doctor's order.

## CAUSES OF ACTION

103. The Plaintiff claims that the Defendant broke the law in the following ways. Where logically necessary, these allegations should be considered pled in the alternative.

### COUNT 1: 42 U.S.C. § 1981: Civil Rights Act of 1866, Race Discrimination

104. Plaintiff incorporates all averments set forth in all other sections of the Complaint.

105. Section 1981 creates a cause of action against any person who violates federal civil rights in contracts by discriminating on the basis of race.

106. Ms. Johnson has a right to equal treatment in contracting under 42 U.S.C. Sec 1981, the Civil Rights Act of 1866.

107. This includes a right to be treated the same as a person of another race in her employment.

108. If Ms. Johnson had been White, she would not have experienced workplace discrimination.

109. But for Ms. Johnson's race, she would not have faced continued harassment from her coworkers and supervisors, Human Resources inaction, workplace isolation, pressure to deviate from work procedures, removal from the security clearance program, denial from job opportunities, pay discrimination, and/or written reprimand.

110. In this way, Defendant violated the Civil Rights Act of 1866.

111. Plaintiff was harmed by this violation.

112. These violations were willful and/or with malice.

**COUNT 2: 42 U.S.C. § 1981: Civil Rights Act of 1866, Retaliation**

113. Plaintiff incorporates all averments set forth in all other sections of the Complaint.

114. Section 1981 creates a cause of action against any person who retaliates against an employee for making a claim of race discrimination.

115. If Ms. Johnson had not opposed or reported race discrimination, she would not have experienced adverse actions.

116. But for Ms. Johnson's protected activity, she would not have faced continued harassment from her coworkers and supervisors, Human Resources inaction, workplace isolation, pressure to deviate from work procedures, removal from

the security clearance program, denial from job opportunities, pay discrimination, and/or written reprimand for reporting racial discrimination.

117. In this way, Defendant violated the Civil Rights Act of 1866.

118. Plaintiff was harmed by this violation.

119. This violation was willful and/or with malice.

**COUNT 3: 42 U.S.C. § 2000e-2: Title VII of Civil Rights Act of 1964, Race Discrimination**

120. Plaintiff incorporates all averments set forth in all other sections of the Complaint.

121. Section 2000e-2 creates a cause of action against any employer who discriminates with respect to hiring, compensation, terms, conditions, or privileges of employment on the basis of race.

122. If Ms. Johnson had been White, she would not have experienced workplace discrimination.

123. But for Ms. Johnson's race, she would not have faced continued harassment from her coworkers and supervisors, Human Resources inaction, workplace isolation, pressure to deviate from work procedures, removal from the security clearance program, denial from job opportunities, pay discrimination, and/or written reprimand.

124. In this way, Defendant violated Title VII of the Civil Rights Act of 1964.

125. Plaintiff was harmed by this violation.

126. This violation was willful and/or with malice.

**COUNT 4: 42 U.S.C. § 2000e-3: Title VII of Civil Rights Act of 1964, Retaliation**

127. Plaintiff incorporates all averments set forth in all other sections of the Complaint.

128. Section 2000e-3 creates a cause of action against any person who retaliates against an employee for opposing race discrimination and/or participating in the EEOC process.

129. If Ms. Johnson had not engaged in protected activity under this statute, she would not have experienced adverse actions.

130. But for Ms. Johnson's protected activity, she would not have faced continued harassment from her coworkers and supervisors, Human Resources inaction, workplace isolation, pressure to deviate from work procedures, removal from the security clearance program, denial from job opportunities, pay discrimination, and/or written reprimand.

131. In this way, Defendant violated Title VII of the Civil Rights Act of 1964.

132. Plaintiff was harmed by this violation.

133. This violation was willful and/or with malice.

**Count 5: 29 U.S.C. § 791: Rehabilitation Act of 1973**

134. Plaintiff incorporates all averments set forth in all other sections of the Complaint.

135. The Rehab Act creates a cause of action when a federal contractor does not make reasonable accommodations to qualified employees with disabilities or otherwise discriminates against them.

136. Ms. Johnson was disabled, regarded as disabled, and/or had a record of disability.

137. The employer failed to accommodate Ms. Johnson as required by law.

138. If Ms. Johnson had not had a disability, she would not have experienced adverse actions.

139. But for Ms. Johnson's disability, she would not have received written reprimands for missing work from March 4-6, 2022.

140. In this way, Defendant violated the Rehabilitation Act of 1973.

141. Plaintiff was harmed by this violation.

## REMEDIES

142. Plaintiff seeks all remedies available, including but not limited to the following:

a. Back pay;

b. Reinstatement and/or front pay, as appropriate;

c. Compensatory damages for emotional distress and any other non-pecuniary harms flowing from Defendant's unlawful actions;

d. Consequential damages and any other pecuniary harms flowing from Defendant's unlawful actions;

e. Nominal damages if no other relief is available or appropriate under the circumstances;

f. Punitive damages commensurate with the misconduct and necessary to deter future violations of the law;

g. Pre- and post-judgment interest;

h. Attorney fees;

i. Costs;

j. An injunction curing Defendant's unlawful actions and prohibiting any future similar actions;

k. Notice given to all employees regarding the violations found by this Court, and notifying such employees of the order entered proscribing any future similar violations;

l. Any other equitable relief as this honorable Court deems appropriate.

m. A final judgment declaring that Defendant's treatment of Plaintiff was unlawful; and/or,

n. Any other relief available under any applicable principle of law or equity.

Respectfully submitted on May 31, 2023,

Vanessa Y. Johnson , Plaintiff

By: /s/Joel F. Dillard
Joel F. Dillard (MSB No. 104202)
*Counsel for Plaintiff*

OF COUNSEL:

JOEL F. DILLARD, P.A.
775 N. Congress St.
Jackson, MS 39202
Telephone: 601-509-1372 (Ext. 2)
Facsimile: 601-509-1372
Email: joel@joeldillard.com